USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/14/2022

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

CHRISTOPHER RANSOM,

                Plaintiff,

-against-

CORRECTION OFFICER BANKS, CAPTAIN KELLY, CAPTAIN SMART, and CAPTAIN ALEXIS,

                Defendants.

1:20-cv-10232 (MKV)

OPINION AND ORDER
GRANTING DEFENDANTS'
MOTION TO DISMISS

---

MARY KAY VYSKOCIL, United States District Judge:

    Plaintiff Christopher Ransom brings this action *pro se* under 42 U.S.C. § 1983 against Defendants Correction Officer Banks, Captain Kelly, Captain Smart, and Captain Alexis. Plaintiff asserts excessive force and deliberate indifference claims, and an action under state law for assault, arising from Plaintiff's pretrial detention at the Manhattan Detention Complex ("MDC"). Defendants have moved to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). [ECF No. 21] ("Mot. Dismiss"). For the reasons discussed herein, Defendants' Motion is granted.

## BACKGROUND

### I. Factual Background

    On this motion, the Court is "constrained to accept as true the factual allegations contained in the complaint and draw all inferences in plaintiff's favor." *Glob. Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 154 (2d Cir. 2006); *Oakley v. Dolan*, 980 F.3d 279, 283 (2d Cir. 2020). The following facts are taken from Plaintiff's Complaint [ECF No. 1] ("Compl.").

On August 17, 2020, Plaintiff was held in an intake holding cell at the MDC along with four other detainees. Compl. ¶¶ 1-2. While being processed for intake, Plaintiff was not "given a mask dur[ing] the COVID-19 pandemic," nor was he "able to physically social[ly] distance [from] the other detainees." Compl. ¶ 3. Correction Officer Banks, Captain Kelly, and Captain Alexis ("the Correction Officer Defendants") approached the holding cell to remove one of the other detainees. Compl. ¶¶ 4-5. While opening the cell, a fight broke out between the Correction Officer Defendants and two other detainees. Compl. ¶¶ 4-5. In an attempt to subdue the other detainees, the Correction Officer Defendants sprayed "chemical agents" into the holding cell. Compl. ¶ 6. Plaintiff, as well as other detainees present, inadvertently inhaled the chemical agents. Compl. ¶¶ 6, 11. The Correction Officer Defendants "did not offer" Plaintiff an opportunity to "decontaminate" himself; however, Plaintiff was later escorted to a medical clinic by Defendant Captain Smart. Compl. ¶¶ 7-8. At the clinic, Captain Smart told Plaintiff that he should decline medical examination in order to go back to his housing unit and sleep. Compl. ¶ 9. A few days later, Plaintiff returned to the medical clinic with complaints of chest pain, wheezing, and shortness of breath. Compl. ¶ 10.

**II.     Procedural Background**

Plaintiff commenced this action on October 8, 2020, in the Eastern District of New York, alleging that Defendants violated 42 U.S.C. § 1983 by using excessive force and being deliberately indifferent to his medical needs. *See* Compl. ¶¶ 12, 14. He also asserted a cause of action for assault under New York state law. *See* Compl. ¶ 13. The action was subsequently transferred to the Southern District *sua sponte* under 28 U.S.C. § 1406(a), which provides for the

transfer of cases filed in the wrong venue. [ECF No. 7] ("Transfer Order").[1] This matter was then assigned to this Court.

Plaintiff seeks $2 million in compensatory damages for the claims against Correction Officer Banks, Captain Kelly, and Captain Alexis and $1 million for the claims against Captain Smart. Compl. ¶¶ 17-18. Additionally, Plaintiff seeks $30,000 in punitive damages against each Defendant. Compl. ¶ 19.

Defendants filed a motion to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(6) and a memorandum of law in support of their motion. [ECF No. 24] ("Defs.' Mem. Law"). Plaintiff filed an opposition to Defendants' motion. [ECF No. 26] ("Pl.'s Opp."). The Defendants thereafter filed a reply. [ECF No. 30] ("Reply"). Months after this case was fully briefed, Plaintiff filed a letter asking the Court to grant leave to file a sur-reply or "take a close look at the cases that the defendants are using to support [their] arguments." [ECF No. 33] ("Pl.'s Letter"). The Court considers that letter and the arguments made in it in connection with Defendants' motion.

## **LEGAL STANDARD**

To withstand dismissal for failure to state a claim pursuant to Rule 12(b)(6), a pleading "must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Thus, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). Although the plausibility standard is "not akin to a 'probability

---

[1] The Eastern District of New York was not a proper venue for this action as all alleged conduct giving rise to Plaintiff's claims occurred at MDC in New York County, which is in the Southern District of New York, and all Defendants are residents of New York County. *See* Transfer Order at 2; 28 U.S.C. § 112(b).

3

requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. In deciding a motion to dismiss under Rule 12(b)(6), a court must accept factual allegations as true and construe all reasonable inferences in the plaintiff's favor. *ECA, Local 134 IBEW Joint Pension Tr. of Chi. v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).

Where a plaintiff is proceeding *pro se*, courts liberally construe the complaint, which, "however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). This maxim applies with particular force when a *pro se* plaintiff alleges a violation of his civil rights. *Sealed Plaintiff v. Sealed Defendant*, 537 F.3d 185, 191 (2d Cir. 2008). Thus, this Court affords Plaintiff "special solicitude" by interpreting his complaint "to raise the strongest claims that it suggests." *Hardaway v. Hartford Public Works Dep't*, 879 F.3d 486, 489 (2d Cir. 2018) (quotation marks omitted). However, a *pro se* plaintiff must still "allege 'enough facts to state a claim to relief that is plausible on its face.'" *Fowlkes v. Ironworkers Local 40*, 790 F.3d 378, 387 (2d Cir. 2015) (quoting *Twombly*, 550 U.S. at 570).

## **DISCUSSION**

Plaintiff's *pro se* Complaint raises questions of federal and state law. The Court will first address Plaintiff's federal claims brought under 42 U.S.C. § 1983 for alleged violations of the Fourteenth Amendment before addressing Plaintiff's pendant state law claim for assault. For the reasons that follow, the Court grants Defendants' Motion to Dismiss; however, the Court will grant Plaintiff the opportunity to amend his Complaint.

**I.     Plaintiff's Section 1983 Claims Fail to State
        a Claim Upon Which Relief Can be Granted**

To state a claim under Section 1983, a plaintiff "must allege that (1) defendants are state actors or acted under color of state law at the time of the challenged action, and (2) the

challenged action deprived him of a right secured by the Constitution or federal law." *Dawkins v. Copeland*, No. 17-CV-09926 (ER), 2020 WL 1529161, at *6 (S.D.N.Y. Mar. 31, 2020) (citing *Am. Mfrs. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 49-50 (1999)). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Id*. (quoting *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993)).

Although Plaintiff's pleadings allege violations under the Eighth Amendment, a pretrial detainee's claim for excessive force and deliberate indifference are evaluated under the Due Process Clause of the Fourteenth Amendment, as "[p]retrial detainees have not been convicted of a crime and thus may not be punished in any manner—neither cruelly and unusually nor otherwise." *Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017). The Court therefore construes Plaintiff's Complaint as alleging constitutional claims under the Due Process Clause of the Fourteenth Amendment. Specifically, the Court liberally construes Plaintiffs Complaint to allege three constitutional claims: excessive force, deliberate indifference to medical needs, and deliberate indifference to safety.

### A.     **Excessive Force**

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." *United States v. Walsh*, 194 F.3d 37, 47 (2d Cir. 1999). To state a claim upon which relief could be granted, "a pretrial detainee must show only that the force purposely or knowingly used against him was objectively unreasonable." *Kingsley v. Hendrickson*, 576 U.S. 389, 396-97 (2015).[2]

---

[2] Although the *Kingsley* decision resolved the standard to be applied at a jury trial, courts have applied the same standard on a motion to dismiss. *See e.g.*, *Edrei v. Maguire*, 892 F.3d 525, 534 (2d Cir. 2018); *Holmes v. City of New York*, No. 17cv3874, 2018 WL 4211311, at *5 (S.D.N.Y. Sept. 4, 2018); *Vargas v. New York City Dep't of Corr.*, No. 17 Civ. 2544 (JGK), 2018 WL 3392873, at *2 (S.D.N.Y. July 12, 2018).

While the Supreme Court left open the possibility that the reckless use of force may suffice to give rise to a cognizable claim in certain cases, the Court has reiterated that the accidental or negligent infliction of harm "is categorically beneath the threshold of constitutional due process." *Id.* at 396 (quoting *County of Sacramento v. Lewis*, 523 U.S. 833, 849 (1998)). The objective reasonableness of any force used is analyzed using contextual factors such as the "relationship between the need for the use of force and the amount of force used;" "the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting." *Edrei*, 892 F.3d at 534 (internal quotation marks omitted). These non-exhaustive considerations "inform the ultimate Fourteenth Amendment inquiry: whether the governmental action was rationally related to a legitimate governmental objective." *Id.* at 536. As relevant here, "wide ranging deference must be accorded to the actions of prison officials in responding to an inmate confrontation." *McArdle v. Ponte*, No. 17cv2806, 2018 WL 5045337 (S.D.N.Y. Oct. 17, 2018), at *4 (internal citations omitted).

Plaintiff alleges the Correction Officer Defendants used excessive force when they sprayed him with a chemical agent. As Plaintiff states in both the Complaint and his opposition, he was not the intended target of the spraying. Compl. ¶ 6; Pl.'s Opp. at 2, 4. Instead, the Corrections Officer Defendants inadvertently sprayed him while subduing other detainees during an altercation. Compl. ¶ 6; Pl.'s Opp. at 2, 4. Courts in this District have repeatedly found that the secondhand inhalation of pepper spray does not typically give rise to a constitutional claim. *Holmes,* 2018 WL 4211311, at *5 (S.D.N.Y. Sept. 4, 2018) (dismissing claim where plaintiff conceded that the spray "was intended for other inmates" and therefore that "his exposure to chemical spray was accidental or negligent" as a matter of law); *McArdle*, 2018 WL 5045337, at

6

\*4 (dismissing claim where plaintiff's allegations that he was an "innocent bystander in the vicinity where pepper spray was deployed" to "de-escalate prisoner conflicts . . . suggest that his exposure to pepper spray, while unfortunate, was at most negligent or accidental. Those allegations are insufficient as a matter of law."); *Vargas*, 2018 WL 3392873, at \*3 (dismissing claim where plaintiff alleged that that he was sprayed in the face when the officer-defendant attempted to stop a fight between other inmates because the officer's conduct was "[a]t most" negligent as a matter of law).

Plaintiff attempts to distinguish this case from others by alleging that he was exposed to firsthand inhalation, rather than secondhand inhalation, because he was in the same holding cell as the intended targets. Pl.'s Opp. at 2. The law does not draw such a distinction. Inhalation of chemical spray is characterized as secondhand if the plaintiff is not the intended target, regardless of the distance between the plaintiff and the target. *See e.g.*, *McArdle*, 2018 WL 5045337, at \*4 (characterizing inhalation as secondhand when plaintiff alleged that he was an "innocent bystander in the vicinity where pepper spray was deployed"); *Vargas*, 2018 WL 3392873, at \*3 (characterizing inhalation as secondhand when plaintiff alleged that he was sprayed in the face when the officer-defendant attempted to stop a fight nearby).

Plaintiff's supplemental letter filed after briefing was complete further argues that cases on which Defendants rely—specifically *McNair v. Ponte* and *Gutierrez v. City of New York*—are inapposite because they do not actually reach the merits of the excessive force claims. *See* Pl.'s Letter at 1-2. Both *McNair* and *Gutierrez* resolved excessive force claims on motions for summary judgment. The Court does not rely on the decisions in those cases here, where the Court resolves whether, as a matter of law, Plaintiff's allegations state a claim upon which relief can be granted. The Court notes, however, that contrary to Plaintiff's arguments, *McNair* and

*Gutierrez* held that the respective plaintiff's excessive force claims failed because secondhand inhalation of a chemical agent is generally not sufficient to support a claim for excessive force. *See Gutierrez v. City of New York,* No. 13 Civ. 3502(JGK), 2015 WL 5559498, at *8 (S.D.N.Y. Sept. 21, 2015) ("[T]he secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim."); *McNair v. Ponte*, 17 Civ. 2976 (AT) (GWG), 2020 WL 3402815, at *10 (S.D.N.Y. June 18, 2020) ("[The defendant's] use of OC spray was aimed at the inmates fighting, and not at [the plaintiff], and therefore an excessive force claim against [the defendant] would fail because 'the secondhand inhalation of pepper spray by persons who were not the intended targets of the discharge does not typically give rise to a constitutional claim.'" (quoting *Gutierrez,* 2015 WL 5559498, at *8).

Plaintiff's allegations at most suggest that his exposure to chemical spray was accidental or negligent—not purposeful or knowing. Because such infliction of harm is "categorically beneath the threshold of constitutional due process," *Kingsley*, 576 U.S. at 396, Plaintiff fails to state an excessive force claim upon which relief can be granted, and the claim must be dismissed.

### B.     Deliberate Indifference

The Court construes Plaintiff's Complaint as alleging two separate constitutional violations for deliberate indifference: one for deliberate indifference to his medical needs against Captain Smart and another for deliberate indifference to his safety against the Correction Officer Defendants.[3] As Defendants observe, Plaintiff does not raise any arguments concerning a deliberate indifference claim in his opposition to Defendants' Motion to Dismiss. *See* Reply at 3. Accordingly, the Court has the discretion to view the deliberate indifference claims as abandoned

---

[3] Plaintiff's Complaint is unclear about which facts and claims are apply to which Defendant. Best read, the Complaint asserts separate claims against Captain Smart and the Correction Officer Defendants. However, even if the Court construed the facts and claims to apply to all Defendants, the outcome would be the same.

by the Plaintiff. *See e.g.*, *Robinson v. Fischer*, No. 09 Civ 8882(LAK)(AJP), 2010 WL 5376204, at *10 (S.D.N.Y. Dec. 29, 2010) ("Federal courts have the discretion to deem a claim abandoned when a defendant moves to dismiss that claim and the plaintiff fails to address in their opposition papers defendants' arguments for dismissing such a claim."); *Masciotta v. Clarkstown Cent. Sch. Dist.*, No. 14-CV-7128 (KMK), 2016 WL 4449660, at *28 n.10 (S.D.N.Y. Aug. 23, 2016) (exercising discretion to dismiss claims on the merits, despite the *pro se* plaintiff's opposition not discussing the claims). Given Plaintiff's *pro se* status, the Court, in its discretion, does not deem the deliberate indifference claims as abandoned. Rather, the Court has reviewed the allegations Plaintiff set forth in his Complaint and determines that they fail to state a claim.

1. **Deliberate Indifference to Medical Needs**

To adequately plead a Fourteenth Amendment Due Process claim, "a plaintiff alleging failure to provide medical treatment to a prisoner must show 'deliberate indifference to serious medical needs.'" *Man Zhang v. City of New York*, No. 17 Civ. 5415 (JFK), 2018 WL 3187343, at *7 (S.D.N.Y. June 28, 2018) (quoting *Ziglar v. Abbasi*, 137 S. Ct. 1843, 1864 (2017)). Courts analyze deliberate indifference to medical needs on a motion to dismiss under a two-prong objective-subjective test. A plaintiff must first satisfy an objective prong, which requires the alleged medical need to be "sufficiently serious, in the sense that a condition of urgency, one that may produce death, degeneration, or extreme pain, exists." *Holmes*, 2018 WL 4211311, at *6 (quoting *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011)). However, "[t]here is no settled, precise metric to guide a court in its estimation of the seriousness of a prisoner's medical condition." *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003). A court's inquiry at the motion to dismiss stage, therefore, "must be tailored to the specific circumstances of each case." *Smith v. Outlaw*, No. 15-CV-9961 (RA), 2017 WL 4417699, at *2 (S.D.N.Y. Sept. 30, 2017) (quoting *Smith v. Carpenter*, 316 F.3d 178, 185 (2d Cir. 2003)).

The second prong of a deliberate indifference to medical needs analysis is subjective and requires a court to consider a defendant's mental state.  Under this prong, a pretrial detainee must allege "that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety."  *Valdiviezo v. Boyer*, 752 F. App'x 29, 32 (2d Cir. 2018) (quoting *Darnell*, 849 F.3d at 35).  A defendant's "actions [must be] more than merely negligent."  *Salahuddin v. Goord*, 467 F.3d 263, 280 (2d Cir. 2006).

Construing the alleged facts in Plaintiff's favor, *see White v. City of New York*, No. 16 Civ. 6183 (LGS), 2017 WL 3575700, at *2 (S.D.N.Y. Aug. 17, 2017), Plaintiff claims that the Defendants acted with deliberate indifference to his medical needs when Captain Smart failed to offer to let him clean himself after he was exposed to second-hand spray and allegedly subsequently instructed him to refuse a medical examination so he could return to his housing unit and go to sleep.  It is undisputed that the Plaintiff was brought to the medical clinic following his exposure to the chemical agent.  Compl. ¶ 8.  Therefore, Plaintiff's claim turns on whether the delay before Plaintiff was taken to the medical clinic constituted deliberate indifference.

A delay in treatment after being pepper sprayed may sometimes give rise to a cognizable claim for denial of medical care.  *See, e.g.*, *West v. City of New York*, No. 13 Civ. 5155(PAE), 2014 WL 4290813, at *5 (S.D.N.Y. Aug. 28, 2014) (finding that a plaintiff stated a claim for deliberate indifference where a named defendant "sprayed him with mace," "left him in the shower for approximately two hours" while he was "was coughing and struggling to breathe; his skin was burning; and he may have been suffering complications related to his preexisting heart

10

murmur," and where that defendant "delayed his access to medical care for the sole purpose of extending his suffering."). However, the Second Circuit "has reserved such a classification for cases in which, for example, officials deliberately delayed care as a form of punishment; ignored a life-threatening and fast-degenerating condition for three days; or delayed major surgery for over two years." *Johnson v. Tucker*, No. 17-CV-2739 (KMK), 2018 WL 2976022, at *5 (S.D.N.Y. June 12, 2018) (quoting *Feliciano v. Anderson*, 15-CV-4106 (LTS) (JLC), 2017 WL 1189747, at *13 (S.D.N.Y. Marc 30, 2017)).

Here, Plaintiff fails to allege with any specificity how long he was denied treatment or whether the delay itself caused or exacerbated any injury. The only injuries Plaintiff alleges were chest pain, wheezing, and shortness of breath as a "result of being sprayed by chemical agents multiple times," Compl. at ¶ 10, not as a result of any delay in providing access to medical care. *See Valdiviezo*, 752 F. App'x at 32 ("When the basis for a prisoner's claim 'is a temporary delay or interruption in the provision of otherwise adequate medical treatment,' this Court examines whether the delay itself created a risk of harm." (quoting *Carpenter*, 316 F.3d at 185-86). In fact, Plaintiff affirmatively alleges that his symptoms developed "a few days later," and does not draw a plausible nexus between his symptoms and the delayed treatment following his exposure to the chemical spray. Compl. ¶ 10. "[W]hile undoubtedly uncomfortable and painful," the "temporary effects of chemical spray," without more, "are not serious medical needs because they do not rise to the level of producing death, degeneration, or extreme pain." *Holmes*, 2018 WL 4211311, at *7. Because the Complaint fails to allege any symptoms beyond the temporary effects of the chemical spray or any impact of the purposeful delay in access to medical care, Plaintiff's claim has not satisfied the objective prong for deliberate indifference.

The Court therefore grants Defendants' Motion to Dismiss Plaintiff's deliberate indifference to medical needs claim.[4]

### 2. Deliberate Indifference to Safety

The Court liberally construes Plaintiff's Complaint to allege that the Correction Officer Defendants were deliberately indifferent when they did not provide him with a mask, and he was unable to socially distance as a protective measure against COVID-19. "A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions." *Darnell*, 849 F.3d at 29. Courts analyze such claims at the motion to dismiss stage under a two-prong test analogous to that used to evaluate a claim for deliberate indifference to medical needs. Thus, to state a cognizable claim a plaintiff must plausibly allege "that the challenged conditions were sufficiently serious," and defendants "acted with at least deliberate indifference to the challenged conditions." *Monroe v. Jouliana*, No. 20 CV 6807 (VB), 2021 WL 6052162, at *3 (S.D.N.Y. Dec. 20, 2021) (quoting *Darnell,* 849 F.3d at 29).

Under the objective prong, a pretrial detainee must plausibly allege the challenged conditions, "either alone or in combination, pose[d] an unreasonable risk of serious damage to his health." *Walker v. Schult*, 717 F.3d 119, 125 (2d Cir. 2013). There is no "'static test' to determine whether a deprivation is sufficiently serious; instead, the 'conditions themselves must be evaluated in light of contemporary standards of decency.'" *Monroe*, 2021 WL 6052162 (quoting *Darnell*, 849 F.3d at 30). Of course, although "the Constitution does not mandate comfortable prisons, prisoners are entitled to basic human needs—*e.g.*, food, clothing, shelter,

---

[4] Because Plaintiff's claim fails under the objective prong, the Court need not reach the second, subjective prong of the deliberate indifference test.

medical care, and reasonable safety." *Randle v. Alexander*, 960 F. Supp. 2d 457, 474-75 (S.D.N.Y. 2013).

The subjective prong for a deliberate indifference to safety claim is the same as for deliberate indifference to medical needs. That standard requires that a pretrial detainee plausibly allege "the defendant-official acted intentionally to impose the alleged conditions, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed . . . even though the defendant-official knew, or should have known," of the risk. *Monroe*, 2021 WL 6052162, at *2 (quoting *Darnell*, 849 F.3d at 35.)  Mere negligence by the officials, however, cannot satisfy the subjective prong. *Id.* (citing *Darnell*, 849 F.3d at 36).

Plaintiff's Complaint off-handedly references the Correction Officer Defendants' failure to provide him a mask or give him the ability to socially distance himself from others during intake. Compl. ¶ 3. Plaintiff does not appear to argue in his opposition that this perceived failure was a basis for a separate cause of action in his Complaint. *See* Pl.s' Opp. at 2-3 (arguing that the Complaint "states a claim for excessive force."). However, given that Plaintiff is proceeding *pro se* the Court construes Plaintiff's Complaint liberally to raise all claims possible, including a possible deliberate indifference claim. *See White*, 2017 WL 3575700, at *2.

The pithy facts contained in Plaintiff's Complaint—that the Correction Officer Defendants did not give him a mask or allow for social distancing—nonetheless fail to give rise to a plausible claim for deliberate indifference here. To be sure, "correctional officials have an affirmative obligation to protect inmates from infectious disease," *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996), and "COVID-19 stands with the roster of infectious diseases from which correctional officials have an affirmative obligation to protect inmates." *Fernandez-Rodriguez v. Licon-Vitale*, 470 F. Supp. 3d 323, 349 (S.D.N.Y. 2020)  (internal quotation marks

13

omitted). Some courts have found that "an inmate can face a substantial risk of serious harm in prison from COVID-19 if a prison does not take adequate measures to counter the spread of the virus." *Chunn v. Edge*, 465 F. Supp. 3d 168, 200 (E.D.N.Y. 2020) (citing cases). But this case is a far cry from the situations other courts have recognized may give rise to a cognizable deliberate indifference to safety claim. Plaintiff fails to plead the necessary facts regarding the specific conditions at the MDC to evaluate the risk of harm by not being provided with a mask. While inadequate measures to protect detainees against COVID-19 can give rise to a claim for deliberate indifference, that substantial risk of serious harm must be evaluated "in light of the totality of the conditions and precautions taken at the prison." *Monroe*, 2021 WL 6052162, at *9 (citing *Chunn*, 465 F. Supp at 200-01); *see also Gil-Cabrera v. Dep't of Corr.*, 1:20-cv-09493 (LTS) (SDA), 2021 WL 5282620, at *4 (S.D.N.Y. Sept. 27, 2021) (serious harm from COVID-19 plausibly alleged by a lack of social distancing *and* failure to screen new inmates). Thus, the risk of serious harm to Plaintiff arising out of the failure immediately upon intake to provide a mask and inability to socially distance must necessarily be considered alongside the related conditions and precautions at the MDC. Further, Plaintiff does not allege in his Complaint a COVID-related harm or risk of harm. Plaintiff's claims are the type of vague allegations that have not sustained a claim for a constitutional violation. *See e.g.*, *Monroe*, 2021 WL 6052162, at *4 (finding serious harm from COVID-19 not plausibly alleged by prison officials failing to provide a detainee with a mask and there being "definitely a lack of social distancing," even with the inclusion of additional allegations of "definitely insufficient cleaning," "the possibility that [the facility] doesn't have [the] antiviral filters that are required," and a "risk of 'numerous' inmates exposed to COVID-19.") Plaintiff's allegations about indifference to his safety, to the

14

extent Plaintiff attempts to plead such a deliberate indifference claim in his Complaint, fails to state a claim upon which relief can be granted and must be dismissed.[5]

## II. Qualified Immunity

Defendants argue that the Complaint should be dismissed because Defendants are protected by qualified immunity. Defs.' Mem. Law at 12-19. Qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (internal quotation marks omitted; citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). "In determining whether a right was clearly established at the time defendants acted, [courts] examine whether the right was defined with reasonable specificity; whether the decisional law of the Supreme Court and the applicable circuit court supports its existence; and whether, under preexisting law, a defendant official would have reasonably understood that his acts were unlawful." *Rodriguez v. Phillips*, 66 F.3d 470, 476 (2d Cir. 1995) (citation omitted). Even where the official violates a clearly established right, the defense of qualified immunity is nevertheless available if "it was 'objectively reasonable' for [the official] to believe that his actions were lawful at the time of the challenged act." *Cerrone v. Brown*, 246 F.3d 194, 199 (2d Cir. 2001) (quoting *Lennon v. Miller*, 66 F.3d 416, 420 (2d Cir. 1995) (internal quotations omitted)).

Where, as here, there are no constitutional violations properly alleged, then the Defendants are entitled to dismissal "not because of qualified immunity, but because [the Defendants] did nothing wrong." *Quezada v. Roy*, 14 Civ. 4056(CM), 2015 WL 5970355, at *10

---

[5] Because Plaintiff's claim fails under the objective prong, the Court does not reach the second, subjective prong of the deliberate indifference test.

(S.D.N.Y. Oct. 13, 2015) (quoting *Dolson v. Vill. of Washingtonville*, 382 F. Supp. 2d 598, 602 (S.D.N.Y. 2005)).  Since the Court dismisses Plaintiff's Section 1983 claims for failure to state a claim, the Court does not reach the question of qualified immunity.

### III.  Plaintiff's State Law Assault Claim Must Be Dismissed for Failure to Comply with New York Notice of Claim Requirement

Plaintiff also alleges an assault claim under state law against the Correction Officer Defendants.  State law claims brought in federal court are subject to state procedural rules.  *Felder v. Casey,* 487 U.S. 131, 152 (1988) ("[F]ederal courts are constitutionally obligated to apply state law to state claims.").  New York General Municipal Law provides that "[n]o action . . . shall be prosecuted or maintained against the city . . . or any employee . . . unless a notice of a claim shall have been made and served upon the city."  N.Y. Gen. Mun. Law § 50-i(1).  A plaintiff bringing tort claims against a municipality or its agent must plead "that (1) the plaintiff has served the notice of claim; (2) at least thirty days have elapsed since the notice was filed (and before the complaint was filed); and (3) in that time the defendant has neglected to or refused to adjust or to satisfy the claim."  *Hardy v. N.Y.C. Health & Hosp. Corp.*, 164 F.3d 789, 793 (2d Cir. 1999).  "Notice of claim requirements are construed strictly by New York state courts, and failure to abide by their terms mandates dismissal of the action for lack of subject-matter jurisdiction."  *Tullino v. City of N.Y.*, No. 15-CV-7106 (JMF), 2016 WL 2967847, at *3 (S.D.N.Y. May 19, 2016).

Here, there are no facts alleged to suggest that Plaintiff has completed a notice of his state law claims as required by the statute.  Defendants assert that the Plaintiff failed to serve a timely notice of claim, an assertion to which the Plaintiff did not respond, let alone dispute.  *See* Defs.' Mem. Law at 20; Reply at 5.  Although the Court must construe the *pro se* Plaintiff's Complaint liberally, the Court cannot exempt Plaintiff from the notice of claim requirements under New

16

York law.  Accordingly, Plaintiff's claim for assault under state law must be dismissed at this stage.

### IV.     Leave to Amend

Leave to amend a complaint should be freely given "when justice so requires," Fed R. Civ. P. 15(a)(2), and *pro se* plaintiffs are generally given leave to amend a deficient complaint. *See Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795-96 (2d Cir. 1999).  It is "within the sound discretion of the district court to grant or deny leave to amend." *McCarthy v. Dun & Bradstreet Corp.*, 482 F.3d 184, 200 (2d Cir. 2007).

The Second Circuit has indicated that district courts should not dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x 28, 31 (2d Cir. 2013).  Because Plaintiff has not previously had an opportunity to amend his complaint, and in light of Plaintiff's *pro se* status, Plaintiff is granted leave to amend to address the deficiencies identified in this opinion.

*     *     *

The Court has carefully reviewed Plaintiff's Complaint and the parties' briefs.  Any remaining allegations or claims not specifically discussed in this opinion are without merit and fail to state a claim upon which relief can be granted.

## CONCLUSION

For the foregoing reasons, Defendants' Motion to Dismiss is GRANTED. If Plaintiff elects to amend his Complaint—which must take into account the pleading deficiencies identified in this opinion—any amendment shall be filed on or before April 14, 2022. The Clerk of the Court is respectfully requested to terminate the motion pending at ECF No. 21 and the related letter request at ECF No. 19 and to mail a copy of this order to Plaintiff at the address of record.

**SO ORDERED.**

**Date:  March 14, 2022**
**New York, NY**

                                                        **MARY KAY VYSKOCIL**
                                                        **United States District Judge**